## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

IN RE:

DAVID ANTHONY ABDO AKA  DAVID A.
ABDO AKA  DAVID ABDO DBA
TURQUOISE TURTLE

CARMEN  SILVIA  MORALES-ABDO  AKA
CARMEN  S.  ABDO  AKA    CARMEN  S.
MORALES-ABDO    AKA    CARMEN    S.
MORALES  AKA  CARMEN  ABDO  AKA
CARMEN  MORALES  DBA  TURQUOISE
TURTLE,

               Debtors.

_____/

Case No.16-11953-PGH

Chapter 11

## WELLS FARGO BANK, N.A.'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY
### (re: 1806 Hill St, New Smyrna Beach, Florida  32169-3224)

**Any interested party who fails to file and serve a written response to this motion within 14 days after the date of service stated in this motion shall, pursuant to Local Rule 4001-1(C), be deemed to have consented to the entry of an order granting the relief requested in the motion.**

      **COMES NOW,** Wells Fargo Bank, N.A. ("Movant"), by and through its undersigned counsel, herby files its *Motion for Relief from the Automatic Stay* and in support states as follows:

### I.      JURISDICTION

      1.     The Court has jurisdiction over this matter pursuant to 11 U.S.C. §362, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

## II.    STATEMENT OF FACTS

### A.    LOAN HISTORY

2.    Carmen S. Morales Abdo ("Borrower") executed a promissory note (the "Note") dated June 22, 2007 in the principal sum of $625,500.00 to World Savings Bank, FSB ("WSB"). (*See* Composite Exhibit "A"). (*See also* Affidavit in Support of Motion for Relief from Stay).

3.    The promissory note is either made payable to Movant or has been duly indorsed. Movant, directly or through an agent, has possession of the promissory note. Movant is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

4.    The Note is secured by a Mortgage (the "Mortgage") granting a security interest in the property located at 1806 Hill St, New Smyrna Beach, Florida    32169-3224 (the "Property"). The Mortgage reflects that it was duly recorded in the Volusia County Recorder's Office in Book 6091 at Page 1675. (*See* Composite Exhibit "B"). (*See also* Affidavit in Support of Motion for Relief from Stay).

5.    The aforementioned mortgage gives Movant a first mortgage position on the property legally described as:

**THE SOUTH 1/3 OR SOUTH 50 FEET OF LOT 10, BLOCK 9, F.C. AUSTIN'S SUBDIVISION, ACCORDING TO MAP RECORDED IN MAP BOOK 1, PAGE 127, PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA; AND ALL OF LOT 14, BLOCK 9, FUQUAY AND ROGERS SUBDIVISION ENTITLED NEW SMYRNA BEACH, ACCORDING TO THE PLAT THEREOF AS RECORDED IN MAP BOOK 7, PAGE(S) 29, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.**

6.    On or about December 31, 2007, WSB's charter and bylaws were amended to change its name to Wachovia Mortgage, FSB ("Wachovia"). (*See* Composite Exhibit "C"). (*See also* Affidavit in Support of Motion for Relief from Stay). On or about November 1, 2009, Wachovia converted to a national bank with the name Wells Fargo Bank Southwest National Association ("WFBSW"). On the same date, WFBSW merged with and into Wells Fargo Bank, National Association. (*See* Composite Exhibit "D"). (*See also* Affidavit in Support of Motion for Relief from Stay).

B.     **PROCEDURAL HISTORY**

7.     On December 20, 2013, Debtors filed a prior voluntary petition under Chapter 13 of the Bankruptcy Code in the Middle District of Florida and were assigned Bankruptcy Case no. 6:13-bk-15320-CCJ (the "First Bankruptcy Case"). On January 21, 2015, the court entered an Order Dismissing the First Bankruptcy Case. (*See* Case No. 13-15320, Dkt. No. 107).

8.     On February 11, 2016, Debtors filed a second voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code in the Southern District of Florida and were assigned Bankruptcy Case No. 16-11953-PGH (the "Bankruptcy Case"). (*See* Docket No. 1).

9.     On June 7, 2016, Movant filed a Proof of Claim listing a secured claim of $930,200.37, including pre-petition arrears of $319,821.24 (*See* Claim No. 10-1).

10.     Pursuant to Debtors' Schedules A and D, the Property has a value of $531,000.00. (*See* Dkt No. 15, "Exhibit E").

11.     A review of the Bankruptcy Case docket indicates that Debtors have failed to file a Chapter 11 Plan and Disclosure Statement after a year of bankruptcy protection. Indeed, Debtors have taken little to no steps towards reorganization. Further, Debtors are delinquent on their monthly operating reports for the months of October 2016 and November 2016.

C.     **THE LOAN STATUS**

12.     As of January 11, 2017, the principal balance owed under the Note is $683,689.10, plus interest, other fees and costs advanced by the mortgagee pursuant to the loan documents.

13.     As of January 11, 2017, the current monthly mortgage payment is $3,965.91, consisting of principal and interest of $3,220.43 and escrow of $745.48. Payments pursuant to the Loan have been in default and remain in default since the petition date. Specifically, the Loan is contractually due for the October 15, 2009 – December 15, 2016 monthly mortgage payments (**87 missed payments**) in the approximate sum of $327,479.92.  (*See* Affidavit in Support of Motion for Relief from Stay).

### III. ARGUMENT

14.     First, Movant's security interest in the subject property is being significantly jeopardized by Debtors' failure to make regular payments under the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such security interest. Specifically, the Loan is contractually due for the October 15, 2009 – December 15, 2016 monthly mortgage payments (**87 missed payments**) in the approximate sum of $326,479.92. Movant respectfully requests that the Court grant it relief from the automatic stay in this case pursuant to 11 U.S.C. §362(d)(1), for cause, namely the default under the Note and the lack of adequate protection to Movant for its security interest in the subject property.

15.     Second, Movant's security interest in the subject property is being significantly jeopardized as there is no equity in the Property. Pursuant to Debtors' Schedules A and D, the value of the Property is $531,000.00[1]. (*See* Exhibit "E"). As discussed above, the principal balance alone is $683,689.10. Accordingly, there is insufficient equity in the Property to protect Movant's interests. As there is no equity in the Property and no prospect of a successful reorganization within the foreseeable future, the Property is unnecessary for Debtors' effective reorganization. As a result, Movant respectfully requests that the Court grant it relief from the automatic stay in this case pursuant to 11 U.S.C. §362(d)(2), for cause, namely the lack of equity and the absence of the likelihood of a successful reorganization.

15.     Movant further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtors.

16.     Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

17.     Movant hereby seeks attorneys' fees in the amount of $850.00 and costs in the amount of $176.00 incurred in filing this Motion for Relief from the Automatic Stay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in Debtors' property outside of the

---

[1] Movant reserves its right to contest this valuation if used for any other purpose.

bankruptcy forum or, in the alternative, that Debtors be directed to make regular cash payments that would adequately protect Movant's interest, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that Debtors be required to pay Movant's attorneys' fees and costs incurred in filing this Motion, that the Court waive the fourteen (14) day stay, that Debtors be required to segregate and account for Movant's cash collateral, that Movant be permitted to communicate with Debtors for the purposes stated above, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:


/s/ *Wanda D. Murray*
Wanda D. Murray
Bar No.: 566381
Aldridge Pite, LLP
Attorney for Movant
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay was served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTORS ATTORNEY**
**(via electronic notice)**

Adam I Skolnik
Law Office of Adam I. Skolnik, P.A.
askolnik@skolniklawpa.com

**DEBTORS**

Carmen Silvia Morales-Abdo
aka Carmen S. Abdo
aka Carmen S. Morales-abdo
aka Carmen S. Morales
aka Carmen Abdo
aka Carmen Morales dba Turquoise Turtle
POB 3107
Lake Worth, FL 33465

David Anthony Abdo
aka David A. Abdo
aka David Abdo
dba Turquoise Turtle
POB 3107
Lake Worth, FL 33465

**U.S. TRUSTEE**

Office of the US Trustee
51 S.W.st Ave.
Miami, FL 33130

**UNITED STATES TRUSTEE**
**(via electronic notice)**

Office of the U.S. Trustee
USTPRegion21.MM.ECF@usdoj.gov

Debtors' list of 20 largest unsecured creditors filed in this case, as shown on the service list attached to the filed copy hereof:

Capital One Bank Usa N
15000 Capital One Dr.
Richmond, VA 23238

Comenity Bank/Beallsfl
Po Box 182685
Columbus, OH 43218

Credit One Bank Na
Po Box 98875
Las Vegas, NV 89193

First Choice Credit Un
Po Box 16659
West Palm Beach, FL 33416

First Premier Bank
601 S Minnesota Ave
Sioux Falls, SD 57104

JPMorgan Chase Bank, N.A.
POB 183232
Columbus, OH 43218-3232

Kohls/Capone
N56 W 17000 Ridgewood Dr
Menomonee Falls, WI 53051

Dated: January 27, 2017

New York Community Bank
1801 W. 9th St.
Cleveland, OH 44114

Northland Group, Inc.
POB 390846
Minneapolis, MN 55439

Ocwen Loan Servicing
1661 Worthington Road
Suite 100
West Palm Beach, FL 33409

Rubin & Debski, P.A.
POB 47718
Jacksonville, FL 32247

Sears
POB 6282
Sioux Falls, SD 57117

Trust Mortgage, LLC
POB 820
Hallandale, FL 33008

Wells Fargo Hm Mortgage
POB 14591
Des Moines, IA 50306-3591

/s/ *Wanda D. Murray*
Wanda D. Murray
Bar No.: 566381
Aldridge Pite, LLP
Attorney for Movant
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

IN RE:                                              Case No.16-11953-PGH

David Anthony Abdo                                  Chapter 11
aka David A. Abdo
aka David Abdo
dba Turquoise Turtle

Carmen Silvia Morales-Abdo
aka Carmen S. Abdo
aka Carmen S. Morales-Abdo
aka Carmen S. Morales
aka Carmen Abdo
aka Carmen Morales
dba Turquoise Turtle

            Debtors.
_____/

**AFFIDAVIT IN SUPPORT OF**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

STATE OF NORTH CAROLINA
COUNTY OF WAKE

    **BEFORE ME**, a notary public duly authorized to take acknowledgements and administer oaths, on this day personally appeared Eric Hickey after having been duly cautioned and sworn under oath, deposes and states as follows:

    1.    I am making this Affidavit in connection with and in support of the Motion for Relief from Stay filed by Wells Fargo Bank, N.A. ("Wells Fargo"), a secured creditor in the above-styled bankruptcy proceeding.

    2.    I am a Vice President Loan Documentation (Job Title) for Wells Fargo. In said capacity, I have access to the computerized account records and have personal knowledge of the facts stated herein.

    3.    I have authority to make this affidavit. Further, I have personally reviewed Wells Fargo's records and make this Affidavit based upon personal knowledge obtained therein.

Affidavit of Indebtedness
Case No. 16-11953-PGH

4.      I am familiar with the loan made on June 22, 2007 by World Savings Bank, FSB, a Federal Savings Bank("WSB") to Carmen S Morales-Abdo in the principal amount of $625,500.00 ("the Loan"), which is the basis for Movant's secured status. The property located at **1806 Hill St., New Smyrna Beach, Florida 32169-3224** has been secured by the Note and Mortgage. A true and correct copy of the Note and Mortgage as attached to the Motion for Relief are herewith adopted by reference and made part thereof.

5.      On or about December 31, 2007, WSB's charter and bylaws were amended to change its name to Wachovia Mortgage, FSB ("Wachovia"). On or about November 1, 2009, Wachovia converted to a national bank with the name Wells Fargo Bank Southwest National Association ("WFBSW"). On the same date, WFBSW merged with and into Wells Fargo Bank, National Association.

6.      In performance of its duties, Wells Fargo maintains a computerized account of the Loan including all receipts and disbursements, charges, and credits.

7.      The amount of indebtedness and the nature and extent of default set forth in the Motion for Relief is derived from the computerized account of the Loan.

8.      Said records are made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters, the records are kept in the course of Wells Fargo's regularly conducted activity and are made by Wells Fargo as a regular practice.

9.      In connection with this case, I have reviewed the computerized account records, loan documents, and other business records of Wells Fargo.

10.      As of January 11, 2017, the current monthly mortgage payment is $3,965.91, consisting of principal and interest of $3,220.43 and escrow of $745.48. Payments pursuant to the Loan have been in default and remain in default since the petition date. Specifically, the Loan is contractually due for the October 15, 2009 – December 15, 2016 monthly mortgage payments (87 missed payments) in the approximate sum of $327,479.92.

11.      As of January 11, 2017, upon examination of these business records, it is determined that there is now due and owing to Wells Fargo upon the note and mortgage an outstanding principal balance of $683,689.10, plus advances made, attorneys' fees and costs, and interest accruing thereon in accordance with the loan documents.

Affidavit of Indebtedness
Case No. 16-11953-PGH

12.    This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Wells Fargo's books and business records, and is intended to show that there is available competent testimony which can be introduced at evidentiary hearing if necessary.

**FURTHER AFFIANT SAYETH NAUGHT.**

Eric Hickey
Vice President Loan Documentation
Wells Fargo Bank, N.A.
January 12, 2017

State of North Carolina    )
County of Wake    )

The Foregoing instrument was sworn to and subscribed before me this 12th day of January, 2016, by Eric Hickey, who is personally known to me.

India N. Barrett

Notary Public, State of North Carolina
My Commission expires: 9/17/2019

India N Barrett
NOTARY PUBLIC
Johnston County, NC
My Commission Expires 9/17/2019

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## 3 YEAR FIXED RATE PICK-A-PAYMENT[sm] LOAN

### CERTIFICATES OF DEPOSIT INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

DATE **June 22, 2007**

BORROWER(S) **CARMEN S MORALES-ABDO, A MARRIED WOMAN** sometimes called "Borrower" and sometimes simply called "I" or "me "

PROPERTY ADDRESS **1806 HILL ST, NEW SMYRNA BEACH, FL  32169-3224**

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S  **$625,500.00** , called "Principal," plus interest, and any other charges incurred during the course of the loan, to the order of the Lender  The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,** ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred

### 2.  INTEREST RATE MODIFICATION PERIOD

This Note contains a "Modification Period "  The Modification Period begins at the same time the obligations evidenced by this Note begin and it continues until **July 15, 2010**

During this Modification Period, I will pay interest at the fixed yearly rate of **7.800%**  After the Modification Period, I will pay interest as described in Section 3 of this Note

### 3.  INTEREST

**(A)    Interest Rate**

Interest will be charged on unpaid Principal until the full amount of the Principal has been paid  I will pay interest at the yearly rate of the Margin stated in Section 3(E) below plus the then current Index  The interest rate I will pay may change as described in this Section 3  Interest will be charged on the basis of a twelve month year and a thirty day month

The interest rate required by this Section 3 is the rate I will pay both before and after any default described in Section 8(B) of this Note

SD260A (2007-04-1)              ADJUSTABLE PICK-A-PAYMENT NOTE - 3 YEAR FIXED          FL
                                        Page 1

Composite Exhibit A

**(B)    Interest Change Dates**

The interest rate I will pay may change on the **15th** day of **July, 2010** and on the same day every month thereafter  Each date on which my interest rate could change is called an "Interest Change Date " The new rate of interest will become effective on each Interest Change Date

**(C)    Interest Rate Limit**

My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap "

**(D)    Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index"  The Index is the average of the last twelve calendar months' most recently published monthly yields on 3-month certificates of deposit (secondary market) as published by the Federal Reserve Board  Lender will calculate the average by adding the twelve most recently published yields together and dividing the result by twelve  Lender will round the result of this division to the nearest one-thousandth of one percentage point (0 001%) by using the following convention  if the value of the 10,000th place is five or greater, the value of the 1,000th place will round up, if the value of the 10,000th place is less than five, the 1,000th place will not change  The most recent Index figure available on each Interest Change Date is called the "Current Index"  For purposes of determining the Index, "published" means first made available to the public by the Federal Reserve Board

**(E)    Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.800** percentage points, called the "Margin," to the Current Index  Subject to the limit stated in Section 3(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date  Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date

**(F)    Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available  For purposes of this Section 3(F), the index is not "available" if  (a) the Index is for any reason no longer published, or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note, or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note  The selection of the alternative index shall be at Lender's sole discretion  The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator  The Lender will give me notice of the alternative index

**4.  PAYMENTS**

**(A)    Time and Place of Payments**

I will pay Principal and interest by making payments every month

I will make my monthly payments on the **15th** day of each month beginning on **August 15, 2007**  I will make these payments every month until I have paid (i) all the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument  If, on **July 15, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender

**(B)    Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U S $ **2,296.37**  This amount will change as described in Sections 4(C) and 4(D) below  My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance

**(C)    Payment Change Dates**

My monthly payment will change as required by Section 4(D) below beginning on the **15th** day of **August, 2008** and on that day every **12th** month thereafter  Each of these dates is called a "Payment Change Date "  My monthly payment will also change at any time Section 4(F) or 4(G) below requires me to pay a different amount

Composite Exhibit A

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 4(F) or 4(G) below

(D)    Calculation of Payment Changes

Subject to Sections 4(F) and 4(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 4(E) below, together with interest at the interest rate in effect on the day of calculation by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date

(E)    Deferred Interest; Additions to My Unpaid Principal

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

(F)    Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal balance can never exceed **125%** of the amount I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 4(C) and 4(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments

(G)    Payment Cap Limitation; Exceptions

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 4(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

(H)    Notice of Payment Changes

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law

5.    FAILURE TO MAKE ADJUSTMENTS

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal

6.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

Composite Exhibit A

**7.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me  The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment

**8.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender  The amount of the charge will be **5.00%** of my overdue payment of Principal and interest  I will pay this late charge promptly but only once on each late payment

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading, or by my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses may include, for example, reasonable attorneys' fees and court costs

**9.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **1806 HILL ST, NEW SMYRNA BEACH, FL  32169-3224**, or at a single alternative address if I give the Lender notice of my alternative address  I give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement  I may designate only one mailing address at a time for notification purposes

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 4(A) above or at a different address if I am given a notice of that different address

**10.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who takes over these obligations is also obligated to keep all of the promises made in this Note  The Lender may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

**11.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor, notice of acceleration, and protest  "Presentment" means the right to require the Lender to demand payment of amounts due  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

**12.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26:**

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission  However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

Composite Exhibit A

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)     Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)    Lender approves the creditworthiness of the transferee in writing,

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)     the transferee executes an assumption agreement which is satisfactory to Lender

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

13. **GOVERNING LAW; SEVERABILITY**
    This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note

14. **CLERICAL ERRORS**
    In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error

15. **LOST, STOLEN OR MUTILATED DOCUMENTS**
    If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

SD260E (2007-04-1)                    ADJUSTABLE PICK-A-PAYMENT NOTE - 3 YEAR FIXED                    FL
                                                          Page 5

Composite Exhibit A

**SIGNATURE PAGE**

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_Carmen S. Morales-Abdo_ (Seal)

CARMEN S MORALES-ABDO

Composite Exhibit A

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

07/09/2007 03:32 PM
Doc stamps 2189.25
Intangible Tax 1251.00
Instrument# 2007-156338 0 1
Book: 8091
Page: 1675

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

NOTE AMOUNT:  $625,500.00

FOR RECORDER'S USE ONLY

## MORTGAGE

THIS IS A FIRST MORTGAGE WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS MORTGAGE IS $781,875.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS MORTGAGE
       (A)    Security Instrument. The Mortgage, which is dated June 22, 2007 will be called the "Security Instrument."

       (B)    Borrower. CARMEN S MORALES-ABDO AND DAVID A ABDO, WIFE AND HUSBAND

sometimes will be called "Borrower" and sometimes simply "I" or "me."

       (C)    Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States  Lender's address is 1901 Harrison Street, Oakland, CA 94612 .

       (D)    Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note " The Note shows that I owe Lender the original principal amount of U S  $625,500.00 ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in full by July 15, 2037 .

       (E)    Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property "

       (F)    Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured "

       (G)    Person. Any person, organization, governmental authority or other party will be called "Person "

FL

mposite Exhibit B

Instrument# 2007-155338 # 2
Book: 6081
Page: 1878

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I mortgage, irrevocably grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property, and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described below

(i)    The property which is located at **1806 HILL ST, NEW SMYRNA BEACH, FL  32169-3224.** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property,

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property,

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to mortgage, grant and convey the Property to Lender, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

Composite Exhibit B

Instrument# 2007-159338 0 3
Book: 5091
Page: 1877

## COVENANTS

I promise and I agree with Lender as follows

1.    **BORROWER'S PROMISE TO PAY**
I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.    **PAYMENTS FOR TAXES AND INSURANCE**
(A)    **Borrower's Obligations**
I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

(B)    **Escrow Accounts**
Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

Composite Exhibit B

Instrument# 2007-156338 0 4
Book: 8091
Page: 1678

3.    **APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument,

Third, to pay the amounts due to Lender under Paragraph 2 above,

Fourth, to pay interest due under the Secured Notes,

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes,

Last, to pay late charges due under the Secured Notes.

4.    **BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property  I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person  If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien  I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice

5.    **BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property  The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender  I may choose the insurance company but my choice is subject to

**Composite Exhibit B**

Instrument# 2007-156338 0 5
Book: 6081
Page: 1879

Lender's approval  Lender may not refuse to approve my choice unless the refusal is reasonable  All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender  If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured  The 30-day period will begin when the notice is given

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above  However, Lender and I may agree in writing to delays or changes

If Lender acquires the Property under Paragraph 27 below, all of my rights in the insurance policies will belong to Lender  Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender  However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

SD010E (2004-10-2)

Composite Exhibit B

Instrument# 2007-156338 0 6
Book: 6091
Page: 1380



6.    **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.    **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.    **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.    *AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY*

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

FL
Composite Exhibit B

Instrument# 2007-156338 # 7
Book: 3C91
Page: 1681

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument  Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future  Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 27 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument  Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument  Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

Composite Exhibit B

Instrument# 2007-155338 # 8
Book: 6091
Page: 1682

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **1806 HILL ST, NEW SMYRNA BEACH, FL 32169-3224.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Mortgage," unless Lender gives me notice of a different address Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

**15.    GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may. (A) collect the rental payments, including overdue rental payments, directly from the tenants, (B), enter upon and take possession of the Property, (C) manage the Property, and (D) sign, cancel and change rental agreements and leases If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 27, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An **assignment** is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment

Composite Exhibit B

Instrument# 2007-156338 # 9
Book: 8091
Page: 1683

**19. CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error

**20. LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**21. WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

**22. CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument

**23. MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

**(A)** If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

**(B)** The following are called the "Constituent Documents " (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project, (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments If I do not pay the dues and assessments when due, Lender may, at its option, pay them I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property, and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy I shall give Lender prompt notice of any lapse in the required hazard insurance coverage I shall provide a copy of such **master** or **blanket** policy to Lender annually

Composite Exhibit B

Instrument# 2007-155338 0 10
Book: 6091
Page: 1684

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking, (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

25.    **FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument

26.    **AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration  If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**Exception to Acceleration of Payment of Sums Secured,** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

SD010J (2004-10-2)

Composite Exhibit B

Instrument# 2007-156339 0 11
Book: 8091
Page: 1885

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 27.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable Federal Law, rule or regulation and, where Federal Law is not applicable, under the law of the state where the Property is located, which will be called the "Applicable Law"

Lender does not have to give me notice of a Breach of Duty unless notice is required by Applicable Law If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the Applicable Law to collect rents from any tenants on the Property and to manage the Property The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the Applicable Law If the Property is sold under the Applicable Law, I agree that it may be sold in one parcel I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the Applicable Law limits or prohibits any such charges

Lender will apply the proceeds from the sale of the Property in the following order (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to, attorneys' fees, if any, (B) to all Sums Secured by this Security Instrument, and (C) any excess to the Person or Persons legally entitled to it

## 28.    LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all of the amounts secured by this Security Instrument, Lender shall release or cancel this Security Instrument without charge to me except that I will pay any recordation costs.

Composite Exhibit B

Instrument# 2007-156338 # 12
Book: 8091
Page: 1886

**29.    STATEMENT OF OBLIGATION**
To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes

**30.    WAIVER OF MAXIMUM ADVANCE**
I waive the right to record a notice allowed by Florida Statute 697 04 (1)(b), as it may be amended, limiting the maximum principal amount which may be secured by this Security Instrument; if I do record such a notice, it will be a Breach of Duty.

**31.    ATTORNEY'S FEES**
The term attorney's fees as used in the Secured Notes or in this Security Instrument shall include any attorney's fees allowed by an appellate court

**32.    RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

**33.    ( x )   QUICK QUALIFYING LOAN PROGRAM**
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument, and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**34.    ( x )   OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence, (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument  If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

Composite Exhibit B

Instrument 2007-156338 0 13
Book: 8091
Page: 1887

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

WITNESS(ES)

Janetta Hilton Gamache          **BORROWER(S):**   RANDALL R. FORMAN

                                                      (Seal)
CARMEN S MORALES-ABDO

                                                      (Seal)
DAVID A ABDO

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

THIS INSTRUMENT PREPARED BY:   DORRIE BRENNAN
                               P.O. BOX 659548
                               SAN ANTONIO, TX 78265-9548

Composite Exhibit B

Instrument# 2007-156338 0 14
Book: 6097
Page: 1888

State of Florida

County of Volusia

**The Foregoing Instrument was Acknowledged** Before me this 25th day of June, 2007, by Carmen S. Morales-Abdo and David A. Abdo, wife and husband who is/are personally known to me or who has/have produced valid driver's license(s) as identification.

_____
NOTARY PUBLIC

_____
Notary Print Name
My Commission Expires:

JANETTA H. GAMACHE
Notary Public - State of Florida
My Commission Expires Nov 16, 2009
Commission # DD 491583
Bonded By National Notary Assn.

Composite Exhibit B

Instrument# 2007-156338 # 15
Book:  6091
Page:  1689
Diane M. Matousek
Volusia County, Clerk of Court

# WORLD SAVINGS

## E X H I B I T "A"

## LEGAL DESCRIPTION

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **VOLUSIA** STATE OF
**FLORIDA**, DESCRIBED AS FOLLOWS:

The South 1/3 or South 50 feet of Lot 10, Block 9, F.C. AUSTIN'S SUBDIVISION, according to map
recorded in Map Book 1, Page 127, Public Records of Volusia County, Florida; and all of Lot 14, Block 9,
Fuquay and Rogers Subdivision entitled New Smyrna Beach, according to the plat thereof as recorded in
Map Book 7, Page(s) 29, of the Public Records of Volusia County, Florida.

TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.

SD010 (2003-03-2) [GF430A3]

Page 14 of 14

FL

Composite Exhibit B

 Office of Thrift Supervision
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc: Robert Burns, FDIC - Atlanta

# EXHIBIT "A"

Composite Exhibit C

## SECRETARY'S AFFIDAVIT OF NAME CHANGE

**STATE:**

**COUNTY:**

I, **Billie Charles**, being a duly appointed and acting Assistant Secretary of Wachovia Mortgage, FSB, whose address is 4101 Wiseman Blvd., San Antonio, TX 78251 being first duly sworn on oath, deposes and says:

Effective December 31, 2007, World Savings Bank, FSB ("the Savings Bank") changed its name to Wachovia Mortgage, FSB as a result of an amendment to the charter and bylaws of the Savings Bank, which was accomplished in accordance with federal regulation as evidenced by the Notice of Amendment of Charter and Bylaws letter issued by the Office of Thrift Supervision ("OTS") (California), on November 19, 2007, and is on file in that office. A true and correct copy of that OTS letter is attached to this Affidavit as Exhibit "A".

_____
Assistant Secretary

State of Texas          §
County of Bexar         §

Before me, _Monica Crivelli_, a Notary Public, personally appeared
_Billie Charles_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same under oath in his/her authorized capacity.

Given under my hand and seal of office this
_15_ day of _January_, 20_08_.

(Seal)

_Monica Crivelli_
Signature of Notary Public

Composite Exhibit C



**Comptroller of the Currency**
**Administrator of National Banks**

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:    Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
       bank and application to merge the converted bank with and into Wells Fargo Bank,
       National Association, Sioux Falls, South Dakota
       Application Control Numbers: 2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009. This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov . Please reference the application control number or numbers
in any correspondence.

Sincerely,

*Stephen A. Lybarger*

Stephen A. Lybarger
Large Bank Licensing Lead Expert

Fill in this information to identify your case and this filing:

| Debtor 1 | David Anthony Abdo | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | Carmen Silvia Morales-Abdo | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF FLORIDA

Case number    16-11953

☐ Check if this is an
amended filing

## Official Form 106A/B
# Schedule A/B: Property                                          12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

☑ Yes. Where is the property?

| 1.1 | | | |
|---|---|---|---|
| 6245 High Ridge Rd. | **What is the property?** Check all that apply | | |
| Street address, if available, or other description | ☐ Single-family home | **Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.** | |
| | ☐ Duplex or multi-unit building | | |
| | ☐ Condominium or cooperative | | |
| | ☐ Manufactured or mobile home | Current value of the entire property? | Current value of the portion you own? |
| Lake Worth      FL      33462-0000 | ☐ Land | $369,170.00 | $369,170.00 |
| City      State      ZIP Code | ☐ Investment property | | |
| | ☐ Timeshare | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** | |
| | ☐ Other | Husband and Wife | |
| | **Who has an interest in the property?** Check one | | |
| Palm Beach | ☐ Debtor 1 only | | |
| County | ☐ Debtor 2 only | | |
| | ☑ Debtor 1 and Debtor 2 only | ☐ **Check if this is community property** (see instructions) | |
| | ☐ At least one of the debtors and another | | |
| | **Other information you wish to add about this item, such as local property identification number:** | | |
| | Folio #: 00-43-45-05-05-000-0211 | | |
| | Purchased: 12/17/99 | | |

Exhibit E

2/25/16 8:27PM

Debtor 1   David Anthony Abdo
Debtor 2   Carmen Silvia Morales-Abdo

Case number *(if known)*   16-11953

**1.2**  If you own or have more than one, list here:

791 Haverhill Road N.

Street address, if available, or other description

West Palm Beach   FL   33415-0000

City          State   ZIP Code

Palm Beach

County

**What is the property?** Check all that apply

☐ Single-family home
☑ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Haverhill Riding Estates TR 35

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?       Current value of the portion you own?
$218,000.00                                  $218,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Husband and Wife

☐ **Check if this is community property** (see instructions)

**1.3**  If you own or have more than one, list here:

1806 Hill St.

Street address, if available, or other description

New Smyrna Beach   FL   32169-0000

City          State   ZIP Code

Volusia

County

**What is the property?** Check all that apply

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☑ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

S 1/3 OF LOT 10 & INC LOT 14 BLK 9 CORONADO BEACH PER OR 527 8 PGS 1592-1593 PER OR 5725 PGS 305-306 PER OR 6091 PG 1671

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?       Current value of the portion you own?
$531,000.00                                  $531,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Fee simple

☐ **Check if this is community property** (see instructions)

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

Exhibit E

2/25/16 8:27PM

| Debtor 1 | David Anthony Abdo | | |
|----------|-------------------|---|---|
| Debtor 2 | Carmen Silvia Morales-Abdo | Case number *(if known)* | 16-11953 |

**1.4** If you own or have more than one, list here:

2615 N. Garden Dr.
Bldg. 3, Unit #112
Street address, if available, or other description

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☑ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☑ Other    Ownership by Co-Debtor Mother for Estate

| Lake Worth | FL | 33461-0000 |
|-----------|-----|-----------|
| City | State | ZIP Code |

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    $35,000.00
Current value of the portion you own?    $0.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Joint tenant

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Palm Beach
County

Other information you wish to add about this item, such as local property identification number:

17-44-43 LAKE CLARKE GARDENS CONDOMINIUM NO 3 PARCEL 112 IN OR1659P1756

**2.** Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................=>    **$1,118,170.00**

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**3.    Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

**3.1**
| Make: | Cadillac |
|-------|----------|
| Model: | SRX-V6 |
| Year: | 2011 |
| Approximate mileage: | 80474 |

Other information:
VIN #: 3GYFNFEY9BS644539

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    $13,250.00
Current value of the portion you own?    $13,250.00

**3.2**
| Make: | Kia |
|-------|-----|
| Model: | Sedona |
| Year: | 2006 |
| Approximate mileage: | 191417 |

Other information:
VIN #: KNDMB233266102922
Vehicle needs new transmission, engine mount. Roof leaks when it rains

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    $500.00
Current value of the portion you own?    $500.00

Exhibit E

2/25/16 8:27PM

| Debtor 1 | David Anthony Abdo | | |
|---|---|---|---|
| Debtor 2 | Carmen Silvia Morales-Abdo | | |
| | | Case number *(if known)* | 16-11953 |

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
■ Yes

| 4.1 | Make: | Fleetwood | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|---|
| | Model: | Bounder 34S Class A | ■ Debtor 1 only | | |
| | Year: | 1991 | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | | | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | | |
| | VIN #: 1GBKP37NXM3308597 Location: 6245 High Ridge Rd., Lake Worth FL 33462 | | ☐ Check if this is community property (see instructions) | $1,280.00 | $1,280.00 |

| 4.2 | Make: | Regal | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|---|
| | Model: | Valanti 176SE | ☐ Debtor 1 only | | |
| | Year: | 1995 | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | | | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | | |
| | HIN # RGMAM336E595 | | ☐ Check if this is community property (see instructions) | $2,500.00 | $2,500.00 |

| 4.3 | Make: | 20' Boat | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|---|
| | Model: | Trailer | ☐ Debtor 1 only | | |
| | Year: | 1995 | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | | | ■ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | | |
| | Location: 6245 High Ridge Rd., Lake Worth FL 33462 Value combined with Boat | | ☐ Check if this is community property (see instructions) | $0.00 | $0.00 |

**5**   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................................................=> | $17,530.00 |

| **Part 3:** | **Describe Your Personal and Household Items** |
|---|---|

| **Do you own or have any legal or equitable interest in any of the following items?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

| See "Schedule A/B-6" Attached hereto Location: 6245 High Ridge Rd., Lake Worth FL 33462 | $1,062.00 |
|---|---|

| See "Schedule A/B-6" Attached hereto Location: 1806 Hill St, New Smyrna Beach FL 32169 | $3,218.00 |
|---|---|

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes. Describe.....

Exhibit E

2/25/16  8:27PM

| Debtor 1 | David Anthony Abdo | | |
|---|---|---|---|
| Debtor 2 | Carmen Silvia Morales-Abdo | Case number *(if known)* | 16-11953 |

| | |
|---|---|
| See "Schedule A/B-7" Attached hereto<br>Location: 6245 High Ridge Rd., Lake Worth FL 33462 | $185.00 |

| | |
|---|---|
| See "Schedule A/B-67 Attached hereto<br>Location: 1806 Hill St, New Smyrna Beach FL 32169 | $100.00 |

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☐ No
   ■ Yes.  Describe.....

| | |
|---|---|
| See "Schedule A/B-8" Attached hereto<br>Location: 6245 High Ridge Rd., Lake Worth FL 33462 | $112.00 |

| | |
|---|---|
| See "Schedule A/B-8" Attached hereto<br>Location: 1806 Hill St, New Smyrna Beach FL 32169 | $785.00 |

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☐ No
   ■ Yes.  Describe.....

| | |
|---|---|
| See "Schedule A/B-9" Attached hereto<br>Location: 6245 High Ridge Rd., Lake Worth FL 33462 | $90.00 |

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes.  Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes.  Describe.....

| | |
|---|---|
| Personal to Debtors, of No Value<br>Location: 6245 High Ridge Rd., Lake Worth FL 33462 | $0.00 |

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes.  Describe.....

| | |
|---|---|
| See "Schedule A/B-12" Attached hereto<br>Location: 6245 High Ridge Rd., Lake Worth FL 33462 | $570.00 |

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☐ No
    ■ Yes.  Describe.....

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Exhibit E

| Debtor 1 | David Anthony Abdo | | |
|---|---|---|---|
| Debtor 2 | Carmen Silvia Morales-Abdo | | Case number *(if known)* 16-11953 |

| | |
|---|---|
| Two (2) Non-Breeding Akitas<br>Personal to Debtors, of no value | $0.00 |

**14. Any other personal and household items you did not already list, including any health aids you did not list**
☐ No
■ Yes. Give specific information.....

| | |
|---|---|
| See "Schedule A/B-14" Attached hereto<br>Location: 6245 High Ridge Rd., Lake Worth FL 33462 | $240.00 |

| | |
|---|---|
| See "Schedule A/B-14" Attached hereto<br>Location: 1806 Hill St, New Smyrna Beach FL 32169 | $60.00 |

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** .......................................................................... | $6,422.00

---

**Part 4:   Describe Your Financial Assets**

**Do you own or have any legal or equitable interest in any of the following?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**16. Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
■ Yes.....................................................................................................................

| | |
|---|---|
| Cash<br>Location: 6245<br>High Ridge<br>Rd., Lake<br>Worth FL<br>33462 | $84.00 |

**17. Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes.......................

| | | Institution name: | |
|---|---|---|---|
| 17.1. | Checking | JPMorgan Chase Bank, N.A.<br>Acct. #: xxxxxxxxxxx7341 | $189.75 |
| 17.2. | Checking | PNC Bank<br>Acct. #: xxxxxx7228<br>Account used for Rental Income | $35.56 |
| 17.3. | Checking | PNC Bank<br>Acct. # xxxxxx0882<br>Business (Turquoise Turtle) Checking Account | $287.11 |
| 17.4. | Credit Union Combined Savings Account | First Choice Credit Union<br>Acct. #: xx5887 | $5.57 |

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

Exhibit E

Case 16-11953-PGH     Doc 15     Filed 02/25/16     Page 15 of 73

2/25/16 8:27PM

| Debtor 1 | David Anthony Abdo |
|----------|-------------------|
| Debtor 2 | Carmen Silvia Morales-Abdo |

Case number *(if known)* 16-11953

| | | Credit Union Combined Checking Account | First Choice Credit Union Acct. #: xx5887 | $102.35 |
|---|---|---|---|---|
| | 17.5. | | | |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
☐ No
■ Yes.................

Institution or issuer name:

TDAmeritrade
Acct. #: xxx-xx3976
Location: POB 3107, Lake Worth FL 33465                                 $0.03

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
■ No
☐ Yes.  Give specific information about them...................
        Name of entity:                                    % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
■ No
☐ Yes. Give specific information about them
        Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
☐ No
■ Yes. List each account separately.
        Type of account:          Institution name:

        Pension                   West Palm Beach Firefighters Pension Fund
                                  Location: 4360 Northlake Blvd., Suite 206, Palm
                                  Beach Gardens, FL 33410                    $136,614.62

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
■ No
☐ Yes. .....................        Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
■ No
☐ Yes............        Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
■ No
☐ Yes............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes.  Give specific information about them...

Official Form 106A/B                    Schedule A/B: Property                              page 7

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                     Best Case Bankruptcy

Exhibit E

2/25/16  8:27PM

| Debtor 1 | David Anthony Abdo | | |
|---|---|---|---|
| Debtor 2 | Carmen Silvia Morales-Abdo | Case number *(if known)* | 16-11953 |

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**
☐ No
■ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

| 2009 Tax Returns - Filed Error created by IRS due to Stolen Tax ID for Debtor and false filed tax return sent to address in Tampa, FL. | Federal | $4,213.00 |
|---|---|---|

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
■ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
☐ No
■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| Primerica Term Life Insurance Acct. #: 0430527769 | David A. Abdo | $750,000.00 |
| Primerica Term Life Insurance Acct. #: 0430527769 | Carmen S. Morales-Abdo | $1,000,000.00 |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
■ No
☐ Yes.  Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                  Best Case Bankruptcy

Exhibit E

2/25/16  8:27PM

| Debtor 1 | David Anthony Abdo | | |
|---|---|---|---|
| Debtor 2 | Carmen Silvia Morales-Abdo | Case number *(if known)* | 16-11953 |

**35. Any financial assets you did not already list**
- ■ No
- ☐ Yes. Give specific information..

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................

| | |
|---|---|
| | $1,891,531.99 |

**Part 5:   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**
- ☐ No. Go to Part 6.
- ■ Yes.  Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**
- ☐ No
- ☐ Yes. Describe.....

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
- ☐ No
- ☐ Yes. Describe.....

| | |
|---|---|
| HP OfficeJet Pro 8610 Printer/Scanner<br>Location: 3609 S. Dixie Hwy., West Palm Beach, FL 33405 | $80.00 |

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
- ☐ No
- ☐ Yes. Describe.....

| | |
|---|---|
| Paint Sprayer and Compressor<br>Location: 6245 High Ridge Rd., Lake Worth FL 33462 | $50.00 |

**41. Inventory**
- ☐ No
- ☐ Yes. Describe.....

| | |
|---|---|
| See Schedule "A/B-41" attached hereto and made a part hereof. | $4,974.00 |

**42. Interests in partnerships or joint ventures**
- ☐ No
- ☐ Yes. Give specific information about them...................
  Name of entity:                              % of ownership:

**43. Customer lists, mailing lists, or other compilations**
- ☐ No.
- ☐ Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

  - ☐ No
  - ☐ Yes.  Describe.....

Official Form 106A/B                          Schedule A/B: Property                                    page 9

Exhibit E

2/25/16  8:27PM

| Debtor 1 | David Anthony Abdo | | |
|----------|-------------------|---|---|
| Debtor 2 | Carmen Silvia Morales-Abdo | Case number *(if known)* | 16-11953 |

44. **Any business-related property you did not already list**
- ■ No
- ☐ Yes. Give specific information.........

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here**................................................................................................ | $5,104.00 |

**Part 6:** Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
- ■ No. Go to Part 7.
- ☐ Yes. Go to line 47.

**Part 7:** Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
- ■ No
- ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ..................................... | $0.00 |

**Part 8:** List the Totals of Each Part of this Form

| | | |
|---|---|---|
| 55. **Part 1: Total real estate, line 2** ................................................................................................ | | $1,118,170.00 |
| 56. **Part 2: Total vehicles, line 5** | $17,530.00 | |
| 57. **Part 3: Total personal and household items, line 15** | $6,422.00 | |
| 58. **Part 4: Total financial assets, line 36** | $1,891,531.99 | |
| 59. **Part 5: Total business-related property, line 45** | $5,104.00 | |
| 60. **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61. **Part 7: Total other property not listed, line 54** + | $0.00 | |
| 62. **Total personal property.** Add lines 56 through 61... | $1,920,587.99 | Copy personal property total  $1,920,587.99 |
| 63. **Total of all property on Schedule A/B.** Add line 55 + line 62 | | $3,038,757.99 |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 6"**
**HILL STREET PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE |
|------|----------|------|-------------|-------|
| Living Room | Household Goods | 2 | Sofa | $ 100.00 |
| Living Room | Household Goods | 3 | Armchair | $ 60.00 |
| Living Room | Household Goods | 1 | Cocktail Table | $ 40.00 |
| Living Room | Household Goods | 5 | End table | $ 100.00 |
| Living Room | Household Goods | 6 | Lamp | $ 60.00 |
| Living Room | Household Goods | 2 | Credenza | $ 50.00 |
| Living Room | Household Goods | 2 | Armoires | $ 50.00 |
| Living Room | Household Goods | 1 | Plants | $ 5.00 |
| Family Room | Household Goods | 1 | Sofa Bed | $ 30.00 |
| Family Room | Household Goods | 1 | Coffee Table | $ 10.00 |
| Family Room | Household Goods | 1 | Desk | $ 10.00 |
| Family Room | Household Goods | 1 | Lamp | $ 5.00 |
| Family Room | Household Goods | 1 | Armoire | $ 30.00 |
| Family Room | Household Goods | 1 | Plants | $ 2.00 |
| Patio | Household Goods | 2 | Patio Table | $ 60.00 |
| Patio | Household Goods | 10 | Patio Chairs | $ 200.00 |
| Patio | Household Goods | 5 | Lounge | $ 100.00 |
| Patio | Household Goods | 1 | Sofa | $ 30.00 |
| Patio | Household Goods | 6 | Plastic Chairs | $ 30.00 |
| Patio | Household Goods | 1 | Loveseat & Chair | $ 12.00 |
| Kitchen | Household Goods | 2 | Microwave | $ 40.00 |
| Kitchen | Household Goods | 2 | Dishwasher | $ 100.00 |
| Kitchen | Household Goods | 2 | Refrigerator | $ 200.00 |
| Kitchen | Household Goods | 2 | Stove | $ 150.00 |
| Kitchen | Household Goods | 2 | Flatware Sets | $ 10.00 |
| Kitchen | Household Goods | 4 | Dishes (Sets) | $ 60.00 |
| Kitchen | Household Goods | 2 | Coffee Maker | $ 10.00 |
| Kitchen | Household Goods | | Pots and Pans | $ 40.00 |
| Dining Room | Household Goods | 2 | Dining Table | $ 80.00 |
| Dining Room | Household Goods | 14 | Dining Chairs | $ 140.00 |
| Dining Room | Household Goods | 1 | Buffet | $ 50.00 |
| Dining Room | Household Goods | 1 | Small Table | $ 20.00 |
| Dining Room | Household Goods | | Mirror and Art | $ 40.00 |
| Master Bedroom | Household Goods | 1 | King Size Bed | $ 50.00 |
| Master Bedroom | Household Goods | 1 | Box Spring | $ 10.00 |
| Master Bedroom | Household Goods | 1 | Headboard | $ 50.00 |
| Master Bedroom | Household Goods | 1 | Dresser | $ 50.00 |
| Master Bedroom | Household Goods | 3 | Night Table | $ 20.00 |
| Master Bedroom | Household Goods | 3 | Lamp | $ 25.00 |
| Master Bedroom | Household Goods | 1 | Desk | $ 10.00 |
| Master Bedroom | Household Goods | 3+1 | Chairs & Chaise | $ 70.00 |

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 6"**
**HILL STREET PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE |
|---|---|---|---|---|
| Master Bedroom | Household Goods | 1 | Chest | $ 20.00 |
| Master Bedroom | Household Goods | 2 | Bedspread | $ 10.00 |
| Master Bedroom | Household Goods | 5 | Pillows | $ 5.00 |
| Master Bedroom | Household Goods | 1 | Armoire | $ 30.00 |
| Master Bedroom | Household Goods | 1 | Mirror | $ 25.00 |
| Master Bedroom | Household Goods | 1 | Twin Bed | $ 10.00 |
| Second Bedroom | Household Goods | 2 | Queen Size Bed | $ 80.00 |
| Second Bedroom | Household Goods | 2 | Box Spring | $ 20.00 |
| Second Bedroom | Household Goods | 1 | Headboard | $ 20.00 |
| Second Bedroom | Household Goods | 2 | Dresser | $ 50.00 |
| Second Bedroom | Household Goods | 4 | Night Table | $ 40.00 |
| Second Bedroom | Household Goods | 4 | Lamp | $ 40.00 |
| Second Bedroom | Household Goods | 1 | Chair | $ 10.00 |
| Second Bedroom | Household Goods | 2 | Bedspread | $ 20.00 |
| Second Bedroom | Household Goods | 8 | Pillows | $ 16.00 |
| Second Bedroom | Household Goods | 2 | Mirror | $ 30.00 |
| Third  Bedroom | Household Goods | 1 | Queen Size Bed | $ 40.00 |
| Third  Bedroom | Household Goods | 1 | Box Spring | $ 10.00 |
| Third  Bedroom | Household Goods | 1 | Headboard | $ 10.00 |
| Third  Bedroom | Household Goods | 1 | Night Table | $ 5.00 |
| Third  Bedroom | Household Goods | 2 | Lamp | $ 10.00 |
| Third  Bedroom | Household Goods | 1 | Chair (Ottoman) | $ 5.00 |
| Third  Bedroom | Household Goods | 1 | Chest | $ 20.00 |
| Third  Bedroom | Household Goods | 1 | Bedspread | $ 5.00 |
| Third  Bedroom | Household Goods | 4 | Pillows | $ 8.00 |
| Third  Bedroom | Household Goods | 1 | Armoire | $ 30.00 |
| Third  Bedroom | Household Goods | 1 | Mirror | $ 10.00 |
| Misc (Den or Office) | Household Goods | 2 | Chair | $ 30.00 |
| Misc (Den or Office) | Household Goods | 1 | Bookshelf | $ 20.00 |
| Misc (Den or Office) | Household Goods | 5 | Lamp | $ 25.00 |
| Misc (Den or Office) | Household Goods | 1 | Footstool | $ 5.00 |
| Misc (Den or Office) | Household Goods | 1 | Armoire | $ 25.00 |
| Misc (Den or Office) | Household Goods | 1 | Credenza/Dresser | $ 25.00 |
| Item Not Listed | Household Goods | 2 | Washer | $ 100.00 |
| Item Not Listed | Household Goods | 2 | Dryer | $ 100.00 |
| Storage Unit | Household Goods | | Kitchen Cabinets, holiday décor | $ 100.00 |
| | | | **Total:** | $ 3,218.00 |

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 7"**
**HILL STREET PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE | COMMENTS |
|---|---|---|---|---|---|
| Living Room | Electronics | 2 | TV (26") | $ 5.00 | |
| Family Room | Electronics | 1 | DVD player | $ 10.00 | |
| Family Room | Electronics | 1 | TV (19") | $ 5.00 | |
| Master Bedroom | Electronics | 1 | TV (19") | $ 5.00 | |
| Second Bedroom | Electronics | 2 | TV (19") | $ 5.00 | |
| Second Bedroom | Electronics | 2 | DVD player | $ 20.00 | |
| Third Bedroom | Electronics | 1 | TV (19") | $ 5.00 | |
| Third Bedroom | Electronics | 1 | DVD player | $ 10.00 | |
| Den | Electronics | 1 | TV | $ 5.00 | |
| Den | Electronics | 1 | DVD player | $ 10.00 | |
| Family Room | Electronics | 1 | Computer | $ 10.00 | 11 years old |
| Family Room | Electronics | 1 | Monitor | $ 10.00 | 11 years old |

**TOTAL**          **$  100.00**

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 8"**
**HILL STREET PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE | COMMENTS |
|------|----------|------|-------------|-------|----------|
| Living Room | Collectibles | 5 | Picture | $ 50.00 | |
| Family Room | Collectibles | 5 | Painting | $ 100.00 | |
| Kitchen | Collectibles | | Plates on wall | $ 15.00 | |
| Dining Room | Collectibles | 4 | Mirror | $ 200.00 | |
| Master Bedroom | Collectibles | | Picture/Art | $ 150.00 | |
| Second Bedroom | Collectibles | 11 | Picture/Art | $ 110.00 | |
| Third Bedroom | Collectibles | 5 | Picture/Art | $ 60.00 | |
| Den | Collectibles | 7 | Picture/Art | $ 100.00 | |

**TOTAL**        **$ 785.00**

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 14"**
**HILL STREET PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE | COMMENTS |
|------|----------|------|-------------|-------|----------|
| Living Room | Other | 2 | DVD Player | $ 5.00 | |
| Item not Listed | Other | 1 | A/C compressor | $ 20.00 | needs repair |
| Item not Listed | Other | 2 | Vacuum Cleaner | $ 10.00 | |
| Item not Listed | Other | | Handtools | $ 10.00 | |
| Storage Unit | Other | | Books | $ 5.00 | |
| Bedroom | Other | 2 | Irons | $ 8.00 | |
| Bedroom | Other | 2 | Ironing Boards | $ 2.00 | |

**TOTAL**          **$ 60.00**

Exhibit E

## DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO
Personal Inventory with Values
### SCHEDULE "A/B 6"
### HIGH RIDGE PROPERTY

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE | COMMENTS |
|------|----------|------|-------------|-------|----------|
| Living Room | Household Goods | 1 | Sofa | $ 20.00 | |
| Living Room | Household Goods | 2 | Armchair | $ 20.00 | |
| Living Room | Household Goods | 2 | End Table | $ 20.00 | |
| Living Room | Household Goods | 2 | Lamp | $ 40.00 | |
| Living Room | Household Goods | 1 | Mirror | $ 20.00 | |
| Patio | Household Goods | 1 | Patio Table | $ 30.00 | |
| Patio | Household Goods | 1 | Sofa | $ 30.00 | |
| Patio | Household Goods | 4 | Chairs | $ 80.00 | |
| Patio | Household Goods | 6 | Patio Chairs | $ 120.00 | |
| Patio | Household Goods | 1 | Grill | $ 20.00 | |
| Patio | Household Goods | 1 | Sofa | $ 40.00 | |
| Pool Area | Household Goods | 2 | Lounge | $ 40.00 | |
| Pool Area | Household Goods | 4 | Chairs | $ 40.00 | |
| Pool Area | Household Goods | 1 | Table | $ 20.00 | |
| Kitchen | Household Goods | 1 | Dinette Table | $ 25.00 | |
| Kitchen | Household Goods | 4 | Chairs | $ 40.00 | |
| Kitchen | Household Goods | 1 | Microwave | $ 10.00 | |
| Kitchen | Household Goods | 1 | Refrigerator | $ 75.00 | |
| Kitchen | Household Goods | 1 | Stovetop | $ 25.00 | |
| Kitchen | Household Goods | 1 | Flatware Set | $ 5.00 | |
| Kitchen | Household Goods | 10 | Tupperware | $ 3.00 | |
| Kitchen | Household Goods | 2 | Dishes (Sets) | $ 30.00 | |
| Kitchen | Household Goods | 1 | Coffee Maker | $ 5.00 | |
| Kitchen | Household Goods | | Pots and pans | $ 25.00 | |
| Master Bedroom | Household Goods | 1 | Queen Size Bed | $ 30.00 | |
| Master Bedroom | Household Goods | 1 | Box Spring | $ 10.00 | |
| Master Bedroom | Household Goods | 1 | Dresser & Chest | $ 50.00 | |
| Master Bedroom | Household Goods | 1 | Lamp | $ 10.00 | |
| Master Bedroom | Household Goods | 1 | Chair | $ 5.00 | |
| Master Bedroom | Household Goods | 3 | Picture/Art | $ 15.00 | |
| Master Bedroom | Household Goods | 1 | Bedspread | $ 5.00 | |
| Master Bedroom | Household Goods | 4 | Pillows | $ 4.00 | |
| Master Bedroom | Household Goods | 2 | Bookshelf | $ 40.00 | |
| Master Bedroom | Household Goods | 1 | Mirror | $ 10.00 | |
| Item not Listed | Household Goods | 1 | Washer | $ 50.00 | |
| Item not Listed | Household Goods | 1 | Dryer | $ 50.00 | |

Exhibit E

**TOTAL**          **$  1,062.00**

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 7"**
**HIGH RIDGE PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE | COMMENTS |
|------|----------|------|-------------|-------|----------|
| Living Room | Electronics | 1 | TV | $ 50.00 | |
| Item not Listed | Electronics | 1 | DVD player | $ 10.00 | |
| Item not Listed | Electronics | 2 | Cell phone | $ 50.00 | |
| Item not Listed | Electronics | 1 | Ipad | $ 25.00 | |
| Item not Listed | Electronics | 1 | Laptop | $ 50.00 | |

|  |  |
|--|--|
| **TOTAL** | **$ 185.00** |

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 8"**
**HIGH RIDGE PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE | COMMENTS |
|------|----------|------|-------------|-------|----------|
| Living Room | Collectibles | 8 | Picture | $ 12.00 | |
| Living Room | Collectibles | 6 | Paintings | $ 100.00 | |

|  | | | **TOTAL** | **$ 112.00** | |

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 9"**
**HIGH RIDGE PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE | COMMENTS |
|------|----------|------|-------------|-------|----------|
| Living Room | Hobby | 1 | Piano | $ 75.00 | |
| Item not Listed | Hobby | 1 | Bicycle | $ 5.00 | Does not work |
| Item not Listed | Hobby | 1 | Guitar | $ 10.00 | |

**TOTAL**          **$   90.00**

Exhibit E

**DAVID ANTHONY ABDO & CARMEN SILVIA MORALES-ABDO**
Personal Inventory with Values
**SCHEDULE "A/B 14"**
**HIGH RIDGE PROPERTY**

| ROOM | CATEGORY | QTY. | DESCRIPTION | VALUE | COMMENTS |
|------|----------|------|-------------|-------|----------|
| Pool Area | Other | 1 | Pool Equip | $   - | Broken |
| Item not Listed | Other | 1 | Vacuum Cleaner | $   5.00 | |
| Item not Listed | Other | | Handtools | $ 200.00 | |
| Item not Listed | Other | 1 | Lawn Mower | $  10.00 | Broken |
| Item not Listed | Other | 1 | A/C compressor | $  25.00 | Old/Scrap |

**TOTAL**          **$ 240.00**

Exhibit E

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | David Anthony Abdo |
| | First Name    Middle Name    Last Name |
| Debtor 2 | Carmen Silvia Morales-Abdo |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | 16-11953 |

☐ Check if this is an amended filing

## Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| | | Amount of claim Do not deduct the value of collateral. | Value of collateral that supports this claim | Unsecured portion If any |

| 2.1 First Choice Credit Union | Describe the property that secures the claim: | $4,800.00 | $13,250.00 | $0.00 |
|---|---|---|---|---|

Creditor's Name

2011 Cadillac SRX-V6 80474 miles
VIN #: 3GYFNFEY9BS644539

1055 S. Congress Ave.
West Palm Beach, FL
33406

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   Vehicle Loan

Date debt was incurred   10/01/11          Last 4 digits of account number   8710

| 2.2 JPMorgan Chase Bank, N.A. | Describe the property that secures the claim: | $311,303.38 | $218,000.00 | $93,303.38 |
|---|---|---|---|---|

Creditor's Name

791 Haverhill Road N. West Palm
Beach, FL 33415  Palm Beach County
Haverhill Riding Estates TR 35

POB 183232
Columbus, OH 43218-3232

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   First Mortgage

Date debt was incurred          Last 4 digits of account number   4695

Official Form 106D          Schedule D: Creditors Who Have Claims Secured by Property          page 1 of 3

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Exhibit E

| Debtor 1 | David Anthony Abdo | | | Case number (if know) | 16-11953 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | Carmen Silvia Morales-Abdo | | | | |
| | First Name | Middle Name | Last Name | | |

---

| 2.3 | New York Community Bank | | $123,529.64 | $369,170.00 | $123,529.64 |
|---|---|---|---|---|---|

**Creditor's Name**

Describe the property that secures the claim:

6245 High Ridge Rd. Lake Worth, FL 33462  Palm Beach County
Folio #: 00-43-45-05-05-000-0211
Purchased: 12/17/99

1801 W. 9th St.
Cleveland, OH 44114

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)  Second Mortgage

Date debt was incurred    Last 4 digits of account number    0996

---

| 2.4 | Ocwen Loan Servicing | $516,522.79 | $369,170.00 | $147,352.79 |
|---|---|---|---|---|

**Creditor's Name**

Describe the property that secures the claim:

6245 High Ridge Rd. Lake Worth, FL 33462  Palm Beach County
Folio #: 00-43-45-05-05-000-0211
Purchased: 12/17/99

1661 Worthington Road
Suite 100
West Palm Beach, FL 33409

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)  Mortgage

Date debt was incurred    Last 4 digits of account number    8749

---

| 2.5 | Trust Mortgage, LLC | $35,500.00 | $218,000.00 | $35,500.00 |
|---|---|---|---|---|

**Creditor's Name**

Describe the property that secures the claim:

791 Haverhill Road N. West Palm Beach, FL 33415  Palm Beach County
Haverhill Riding Estates TR 35

POB 820
Hallandale, FL 33008

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 3

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

Exhibit E

Debtor 1    David Anthony Abdo

        First Name         Middle Name        Last Name

Debtor 2    Carmen Silvia Morales-Abdo

        First Name         Middle Name        Last Name

Case number (if know)    16-11953

☐ Check if this claim relates to a community debt    ■ Other (including a right to offset)    Mortgage

| Date debt was incurred | Last 4 digits of account number | 9110 |
| --- | --- | --- |

---

**2.6**  Wells Fargo Hm Mortgage

Creditor's Name

POB 14591
Des Moines, IA
50306-3591

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☐ Debtor 1 only

■ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

| Date debt was incurred | Last 4 digits of account number | 0115 |
| --- | --- | --- |

**Describe the property that secures the claim:**

1806 Hill St. New Smyrna Beach, FL 32169  Volusia County
S 1/3 OF LOT 10 & INC LOT 14 BLK 9 CORONADO BEACH PER OR 527 8 PGS 1592-1593 PER OR 5725 PGS 305-306 PER OR 6091 PG 1671

$664,971.61    $531,000.00    $133,971.61

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent

☐ Unliquidated

■ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

■ Other (including a right to offset)    First Mortgage

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | $1,656,627.42 |
| --- | --- |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $1,656,627.42 |

**Part 2:**  List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name, Number, Street, City, State & Zip Code
JPMorgan Chase Bank, N.A.
Mail Code: OH4-7302
POB 24696
Columbus, OH 43224-0696

On which line in Part 1 did you enter the creditor?    2.2

Last 4 digits of account number    4695

☐ Name, Number, Street, City, State & Zip Code
Trust Mortgage, LLC
POB 3926
Hallandale, FL 33008

On which line in Part 1 did you enter the creditor?    2.5

Last 4 digits of account number    9110

☐ Name, Number, Street, City, State & Zip Code
TSF MORTGAGE LLC
POB 820
Hallandale, FL 33008

On which line in Part 1 did you enter the creditor?    2.5

Last 4 digits of account number    9110

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Exhibit E